IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **CORNELIUS BRYANT** and **DAROLD KELLY**, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. 22-3310-PJM |
| **GEICO CASUALTY COMPANY** and **GEICO GENERAL INSURANCE COMPANY**, | * | |
| Defendants. | | |

\*\*\*

## MEMORANDUM OPINION[1]

On January 27, 2023, Defendants Geico Casualty Company ("Geico Casualty") and Geico General Insurance Company ("Geico General") filed a Motion to Dismiss this putative class action. *See* ECF No. 22. The Court deferred ruling on Defendants' Motion until jurisdictional discovery had concluded and until after the Court resolved any renewed motion to remand filed by Plaintiffs Cornelius Bryant and Darold Kelly. *See* ECF No. 55.

Plaintiffs have now filed a Renewed Motion to Remand (ECF Nos. 62, 63). The Motion has been fully briefed. *See* ECF Nos. 65, 66, 71, 72. Based on the parties' submissions, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the reasons that follow, the Court will **GRANT** Plaintiffs' Motion to Remand (ECF Nos. 62, 63) and **DENY AS MOOT** Defendants' Motion to Dismiss (ECF No. 22), which may be refiled once the case is back in state court.

---

[1] Certain of the figures quoted in this Memorandum Opinion were derived from Defendants' proprietary information. Accordingly, the Court publishes two versions of this Opinion, one under seal and the other on the public docket with limited redactions to prevent the disclosure of this proprietary information.

## BACKGROUND

Cornelius Bryant and Donald Kelly are residents of Maryland. ECF No. 2 ¶¶ 17-18. Bryant claims that he purchased uninsured motorist ("UM") insurance from Geico Casualty, whose principal place of business is in Maryland. *See id.* ¶ 20; ECF No. 66. Kelly claims he purchased UM insurance from Geico General, whose principal place of business is also in Maryland. *See id.* ¶ 21.[2]

Plaintiffs state that they were separately involved in car accidents with unidentified—and therefore uninsured—"hit and run" drivers in 2019 and 2021, respectively. *See id.* ¶¶ 24, 35. Following their accidents, Plaintiffs filed claims with Defendants, which Defendants accepted. *See id.* ¶¶ 27, 37.

When Plaintiffs presented their vehicles to Defendants, they sought to have their losses adjusted to include the diminished value resulting from their collisions. *See id.* ¶¶ 28, 38. According to Plaintiffs, Defendants refused to adjust the losses or to compensate Plaintiffs for the vehicles' diminished values. *See id.* Instead of making these adjustments, Defendants disclaimed any obligation to remunerate Plaintiffs based a so-called "Limit of Liability" clause in the UM Coverage sections of their policies, which provides:

> The limit of Uninsured Motorists Property Damage Liability coverage stated in the Declarations is the total limit of our liability for all such damages, including damages for loss of use of an auto owned by you, sustained in any one accident. The limit of liability will not include diminished value of your insured auto.

*See id.* ¶¶ 29, 40.

On September 30, 2022, Plaintiffs filed a putative class action Complaint in the Circuit Court for Montgomery County, Maryland against Defendants. *See* ECF No. 13-1. The Complaint asserts

---

[2] Plaintiffs allege that Defendants are corporations formed under the laws of Maryland, but Defendants contend that the companies were formed in Nebraska. *See* ECF No. 11 ¶ 2. Defendants' States of incorporation are immaterial to the present Motion because it is undisputed that both Defendants are also citizens of Maryland. *See id.*

four causes of action: Count I is for breach of contract, brought by Bryant and all those similarly situated against Geico Casualty; Count II is for breach of contract, brought by Kelly and all those similarly situated against Geico General; Count III is for a declaratory judgment under Section 3-406 of the Courts and Judicial Proceedings Article of the Maryland Code, brought by Bryant and all those similarly situated against Geico Casualty; and Count IV is for a declaratory judgment under Section 3-406 of the Courts and Judicial Proceedings Article of the Maryland Code, brought by Kelly and all those similarly situated against Geico General. *See* ECF No. 2. Plaintiffs allege that Defendants' denials of the diminished value loss adjustments, and the "Limit of Liability" clauses in their policies, violate Maryland law because, among other reasons, such exclusions are "not expressly authorized by the Maryland Legislature" and fail to "provid[e] the minimum coverage required by Maryland's Financial Responsibility Law." *See, e.g.*, *id.* ¶¶ 42, 125.

The Complaint proposes a "Geico Casualty Class" to include Bryant and all those similarly situated as follows:

> All persons and/or entities who were: (1) Geico Casualty insureds with Maryland automobile policies whose vehicles were damaged due to an accident with an uninsured motorist; (2) Whose claims were accepted by Geico Casualty as arising under the UM Coverage of their Maryland automobile policies; and (3) For whom Geico Casualty failed to adjust the property damage claim to include payment for post-repair diminished value damages.

*Id.* ¶ 54. A proposed "Geico General Class," which includes Kelly and all those similarly situated, is defined with identical language, except that the Defendant's name is substituted. *Id.* Both definitions exclude from their coverage "claims involving leased vehicles or total losses" and "the assigned judge [and] any member of the assigned judge's immediate family." *Id.*

On December 22, 2022, Defendants removed the case to this Court. *See* ECF No. 1. On January 27, 2023, Plaintiffs filed a motion to remand to state court and a conditional motion for

leave to conduct jurisdictional discovery. *See* ECF Nos. 20 & 21. That same day, Defendants filed a motion to dismiss. ECF No. 22.

In their response in opposition to Plaintiffs' initial motion to remand, Defendants justified removal of the case on the ground that the Court possesses jurisdiction by virtue of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because the case involves minimally diverse litigants, proposed classes of at least 100 members, and more than $5 million in controversy. *See* ECF No. 29. In support of their argument that the case presents a minimal diversity of citizenship, Defendants cite to records in their internal database that showed that two putative class members are likely to be citizens of Washington, D.C., and Texas. *See* ECF No. 29, ECF No. 29-2. Defendants apparently corroborated the citizenship of these two putative class members using public records searches. *See* ECF No. 29-1.

On May 1, 2023, the Court denied Plaintiffs' initial motion to remand without prejudice and granted Plaintiffs' motion for leave to conduct jurisdictional discovery. ECF No. 55. The Court's May 1, 2023 Order permitted Plaintiffs to renew their request to remand following jurisdictional discovery and deferred ruling on Defendants' Motion to Dismiss until "the Court resolves any renewed Motion to Remand." *Id.*

## DISCUSSION

The parties' immediate dispute is centered on whether either of the "local controversy" or "home state" exceptions to CAFA applies to the facts of this case.

### I.

As explained by the U.S. Court of Appeals for the Fourth Circuit, "Congress enacted CAFA in 2005 to expand subject matter jurisdiction in the federal courts over interstate class actions of national importance." *Dominion Energy, Inc. v. City of Warren Police & Fire Ret. Sys.*, 928 F.3d 325, 329 (4th Cir. 2019) (quotation omitted). Congress amended the diversity-jurisdiction statute,

28 U.S.C. § 1332, to vest original jurisdiction in the district courts over class actions "in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs," and where "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).[3] "The burden of establishing federal jurisdiction on the removal of a class action" under CAFA "is on the removing party." *Johnson v. Advance Am.*, 549 F.3d 932, 935 (4th Cir. 2008) (citing *Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 298 (4th Cir. 2008)).[4]

Although Congress expanded federal court jurisdiction over such class actions to "address abuses of the class action device" based on a perception that the state and local courts were "keeping cases of national importance out of Federal court," *id.* (quotation marks omitted), Congress did not seek to deprive state and local courts of adjudicating all class actions. Instead, CAFA includes what are colloquially known as the "local controversy" and "home state" exceptions, which provide that a district court "shall decline to exercise jurisdiction" over certain kinds of class actions. These exceptions were fashioned to strike a balance in federalism—while general CAFA jurisdiction allows large cases of national importance to be litigated in federal court (thus limiting possible home-state biases), the local controversy and home state exceptions preserve the role of state courts in adjudicating matters that are truly local in character. *See, e.g., Quicken Loans Inc. v. Alig*, 737

---

[3] CAFA provides two additional grounds for a district court's original jurisdiction, neither of which apply here. *See* 28 U.S.C. § 1332(d)(2)(B)-(C).

[4] The parties do not dispute whether Defendants' initial removal was proper, but the Court must be satisfied that it possesses jurisdiction under CAFA before considering an exception to justify remand. *See Adams v. W. Marine Prods.*, 958 F.3d 1216, 1221 (9th Cir. 2020). Based on Defendants' submissions when opposing Plaintiffs' initial motion to remand—in addition the parties' instant submissions—the Court finds that CAFA jurisdiction has been established because the case concerns an amount in controversy in excess of $5 million and minimal diversity exists. *See* ECF No. 66 at 2 n.1 (incorporating Defendants' earlier arguments in support of CAFA jurisdiction); ECF Nos. 29-1 & 29-2 (attesting to evidence showing that two putative class members are citizens of Washington, D.C. and Texas).

F.3d 960, 965 (4th Cir. 2013); *Woods v. Standard Ins. Co.*, 771 F.3d 1257, 1262 (10th Cir. 2014);

*Evans v. Walter Indus.*, 449 F.3d 1159, 1164 (11th Cir. 2006).

Under the "local controversy" exception, "a district court 'shall' decline to exercise

jurisdiction when:

> (1) more than two-thirds of the members of the proposed plaintiff class are citizens
> of the state where the suit was filed originally; (2) at least one defendant (a) is a
> defendant from whom members of the plaintiff class are seeking 'significant relief,'
> (b) is a defendant whose conduct 'forms a significant basis' for the proposed
> plaintiff class's claims, and (c) is a citizen of the state in which the action originally
> was filed; (3) the principal injuries stemming from the conduct alleged in the
> complaint occurred in the state where the action was filed originally; and (4) in the
> three years before the filing of the class action complaint, no other similar class
> action was filed against any of the defendants on behalf of the same or other class.

*Alig*, 737 F.3d at 964 (quoting 28 U.S.C. § 1332(d)(4)(A)).

There are two grounds for ordering remand under the "home state" exception, one mandatory

and the other discretionary. *See Adams*, 958 F.3d at 1221. The mandatory home state exception

provides that a district court "shall" decline to exercise jurisdiction over a class action where "two-

thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary

defendants, are citizens of the State in which the action was originally filed." 28 U.S.C.

§ 1332(d)(4)(B). The discretionary home state exception permits a district court to order remand

"in the interests of justice" where more than one-third but less than two-thirds of the proposed class

members are citizens of the "State in which the action was originally filed." *Id.* § 1332(d)(3). When

exercising this discretion, a district court must consider "whether the claims asserted involve matters

of national or interstate interest"; whether the claims asserted are governed by the law of the State

in which the action was filed; whether the complaint has been pled to avoid federal jurisdiction,

whether the action was brought in a State with a distinct nexus to the class members, the alleged

harm, or the defendants; whether the number of proposed class members who are citizens of the

original State is "substantially larger" than the number of citizens of other States; and whether a similar case has been filed in the three-year period preceding date the class action was filed. *Id.*

The party seeking remand bears the burden of proving by a preponderance of the evidence that one of these exceptions applies. *See Bartels v. Saber Healthcare Grp. LLC*, 880 F.3d 668, 681 (4th Cir. 2018) (citing *Brinkley v. Monterey Fin. Servs., LLC*, 873 F.3d 1118, 1121 (9th Cir. 2017)).

## II.

Plaintiffs seek remand under either the local controversy or home state exceptions to CAFA. *See* ECF No. 62-1 at 4-6. Defendants' opposition is focused solely on the argument that Plaintiffs have failed to establish that more than two-thirds of the proposed class are citizens of Maryland, a required factor under both exceptions. *See* ECF No. 66 at 3-12.

"A person is a citizen of a state only if she is a citizen of the United States and a domiciliary of that state. . . . Whether a person is a domiciliary turns on the individual's intent. Not all those physically present within a state are residents," and not all residents are citizens of a State unless they intend to remain indefinitely. *Scott v. Cricket Communs., LLC*, 865 F.3d 189, 195 (4th Cir. 2017) (citation omitted). "When citizenship is questioned, a court must make an individualized inquiry," looking to indicia of domiciliary intent, including current residence, driver's license and automobile registration, voter registration, and the location of real and personal property, among others. *Id.* "No single factor is dispositive." *Id.*

In many cases, a plaintiff may establish entitlement to a remand under either of these exceptions if the proposed class definition limits itself to citizens of their home state. *See, e.g., In re Spring Nextel Corp.*, 593 F.3d 669, 676 (7th Cir. 2010) (observing that remand would be appropriate if plaintiffs "defined their class as all Kansas *citizens* who purchased text messaging from" the defendant because "it doesn't take any evidence to establish that Kansas citizens make up

at least two-thirds of the members of a class that is open only to Kansas citizens) (citing *Johnson*, 549 F.3d at 937-38)); *Simring v. Greensky, LLC*, 29 F.4th 1262, 1267 (11th Cir. 2022).

Here, the proposed class is not limited to Maryland citizens, but instead includes those "insured with Maryland policies," so Plaintiffs must present some other evidence of the citizenship of the proposed class members. Plaintiffs claim to have met their burden of proving citizenship through Defendants' responses to interrogatories, deposition testimony from Defendants' corporate designee, and statements made in prior declarations that Defendants submitted to establish minimal diversity under CAFA. *See* ECF No. 62-1 at 8-9. Specifically, Plaintiffs cite to representations by Defendants' deponent that the proposed class includes "[a redacted number of] claims under the [UM] Coverage provision of Maryland automobile policies," and that of those claims, a large percentage of claimants have Maryland driver's licenses, an even larger percentage of claimants have Maryland addresses, and even more claimants have Maryland insurance policies issued by Defendants. *Id.* at 16; ECF No. 71 at 11.[5] These data points, argue Plaintiffs, when considered in light of Maryland's requirements for registering and insuring an automobile in the State, suffice to establish the domiciliary intent of the proposed class for purposes of either CAFA exception. *See, e.g.*, ECF No. 71 at 10.[6]

Defendants contend that Plaintiffs' evidence merely shows proof of *residency*, not domiciliary intent. ECF No. 66 at 3. According to Defendants, it is impossible ascertain each class

---

[5] The Court does not quote the precise figures in this public-facing version of this Memorandum Opinion but instead uses generalized language to prevent disclosure of proprietary information. *See* note 1, *supra*.

[6] Under Maryland law, newcomers are required to register their automobiles with the Department of Transportation Motor Vehicles Administration within 60 days of arrival. Md. Code Ann., Transp. § 13-402(c)(7). To register, individuals must first possess Maryland liability insurance. *See id.* § 17-104(a). Even if an individual previously held insurance issued by another State, they are required to convert their policy to one meeting Maryland's minimum coverage requirements prior to registration. *Id.* § 17-103(b). New arrivals must also obtain a Maryland driver's license within 60 days of moving to the State. *See id.* § 16-102(a)(6). Although not dispositive, the Court notes that these requirements use the term "resident," whose domicile includes a person who "is domiciled in this State." *Id.* § 11-149(1). Further, many of these requirements contain carve-outs for common categories of nonresidents, like members of Congress or college students. *See id.* §§ 16-102(a)(2), (a)(5) (providing that a Maryland driver's license is not required for members of Congress or college students if certain conditions are met).

member's domiciliary intent without conducting an intensive, individualized review of every possible class member. *Id.* at 4-5. Defendants also caution the Court not to put undue weight on the numbers derived from their internal customer database because there is no guarantee that it is regularly maintained or accurate enough to establish the addresses, driver's licenses, and policy information of customers as of the date of removal. *Id.* at 6, 7, 11-12.

The Fourth Circuit does not appear to have addressed the question of whether a combination of driver's licenses, residence addresses, and local requirements for vehicle registration and insurance suffice to establish domicile for purposes of the local controversy or home state exceptions. However, several of its sister circuits have addressed similar issues. *See, e.g., Mason v. Lockwood, Andrews & Newman, P.C.*, 842 F.3d 383 (6th Cir. 2016); *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880 (9th Cir. 2013); *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564 (5th Cir. 2011); *see also Lax v. App of N.M. ED, PLLC*, 2022 WL 2711230 (10th Cir. July 13, 2022). Among these decisions is a recognition that the citizenship inquiry under CAFA's exceptions should be guided by practicality and reasonableness. *See, e.g., Mason*, 842 F.3d at 393-94 (discussing cases).

In *Mason*, the Sixth Circuit went so far so to recognize a presumption of citizenship from evidence of residency under CAFA. *See id.* The Sixth Circuit's decision was based in part on the observation that the general presumption against federal jurisdiction—which is one of the reasons for the requirement of domiciliary intent to establish citizenship—does not hold equal force under CAFA. *See id.* This is so because the local controversy exception is not jurisdictional and, therefore, a residency-domicile presumption, which is ordinarily insufficient to prove State citizenship, "fits particularly well in the CAFA exception context, where the moving party is tasked with demonstrating a fact-centered proposition about a mass of individuals, many of whom may be unknown at the time the complaint is filed and the case removed to federal court." *Id.* The Fourth

9

Circuit has suggested that it may be open to this line of reasoning, *Scott*, 865 F.3d at 165 n. 6, and two district Judges within this Circuit have applied *Mason*'s framework to justify remands to state courts under the CAFA exceptions. *See Russo v. Eastwood Constr. Partners, LLC*, No. 2:22-cv-1686-DCN, 2023 U.S. Dist. LEXIS 38702 (D.S.C. Mar. 7, 2023); *Cook v. S.C. Pub. Serv. Auth.*, No. 6:19-cv-03285-TLW, 2020 U.S. Dist. LEXIS 32764 (D.S.C. Jan. 21, 2020).

In *Russo*, the court found remand appropriate under the local controversy exception in a putative class action involving damage to homes in a particular neighborhood where construction was overseen by one general contractor and the plaintiffs provided "property-tax records, delineating those class members who claimed the owner-occupied tax, with the resulting number of South Carolina citizens reaching eighty-eight percent." 2023 U.S. Dist. LEXIS 38702, at *39. Similarly, in *Cook*, the court ordered the remand of a putative class action concerning allegedly improper home utility bills where the plaintiffs offered "evidence relating to the billing and service addresses of the class members," which showed that "82% of the class members have or had billing addresses in South Carolina." 2020 U.S. Dist. LEXIS 32764, at *22, 26.

As in *Russo* and *Cook*, the Court is satisfied that Plaintiffs have presented sufficient evidence to show that two-thirds of the proposed class are domiciled in Maryland and, therefore, remand to the Circuit Court for Montgomery County is appropriate under the mandatory home state exception. The Court draws this conclusion based on a review of Defendants' proprietary data that Plaintiffs have submitted, as discussed in the Court's Memorandum Opinion filed under seal simultaneously with this public copy. The Court is not persuaded that *Russo* and *Cook* are distinguishable just because those cases concerned damages to immobile, real property (homes) and this case concerns transitory, personal property (vehicles). Just as the *Cook* court found it "utterly implausible to believe that more than two-thirds of the electrical customers of [the defendant] and the cooperatives are citizens of a state other than South Carolina," *id.* at 27-28, the Court finds it equally implausible

10

to believe that more than two-thirds of the proposed class—defined as holding Maryland-based insurance policies—could be citizens of a state other than Maryland. Maryland's requirements for driver's licenses and vehicle registration further reinforce this conclusion.[7] To deny remand here, as Defendants urge, simply because Plaintiffs have not provided individualized proof that each member of the proposed class possesses the requisite domiciliary intent to establish citizenship would vitiate any practicality or reasonableness that is to be applied to the inquiry of citizenship under CAFA's exceptions. *See, e.g., Mason*, 842 F.3d at 393-94. Further, although the Fourth Circuit has cautioned that a federal court's jurisdiction under CAFA should be construed "broadly," and its exceptions should be ready "narrowly," *Dominion Energy*, 928 F.3d at 336, the reason for these rules of construction lies in CAFA's "objective of ensuring that interstate class action claims of national importance are heard and resolved in the federal courts." *Id.* at 338. This case does not appear to present "interstate class action claims of national importance." Rather, Plaintiffs' claims are derived from Maryland insurance law, and are asserted by a proposed class that appears to be predominantly composed of Maryland residents.

In any event, even if Plaintiffs' evidence were insufficient to justify remand under the mandatory home state exception, the Court would find remand appropriate under the discretionary home state exception. *See Cook*, 2020 U.S. Dist. LEXIS 32764, at *26. Plaintiffs' evidence suffices to show that more than one-third of proposed class members are Maryland citizens, and the statutory considerations for an exercise of discretion under 28 U.S.C. § 1332(d)(3) heavily favor remand.

As noted, the claims asserted in this case do not involve matters of national or interstate interest because they are derived from Maryland's insurance requirements, and not the laws of other States, *id.* § 1332(d)(3)(A)-(B); this class action cannot be said to have been pleaded in a manner

---

[7] *See* note 4, *supra*.

11

that seeks to avoid Federal jurisdiction because the case was clearly suitable for filing in state court, *id.* § 1332(d)(3)(C); Maryland has a distinct and significant nexus with the proposed class members, the alleged harm, and Defendants because Maryland law provides the rights that Plaintiffs claim were injured by Defendants' refusal to provide diminished value adjustments, *id.* § 1332(d)(3)(D); the number of Maryland residents in the proposed class is substantially larger than number of residents of any other State, *id.* § 1332(d)(3)(E); and no other class action asserting the same or similar claims on behalf of the proposed class has been asserted in the three-year period preceding the filing of this case, *id.* § 1332(d)(3)(F).[8]

In sum, the Court concludes that remand to the Circuit Court for Montgomery County is appropriate under CAFA and, accordingly, will **GRANT** Plaintiffs' Motion to Remand (ECF Nos. 62, 63). Having decided to grant Plaintiffs' Motion to Remand, the Court will **DENY** Defendants' Motion to Dismiss (ECF No. 22) as **MOOT**.

### CONCLUSION

In conclusion, the Court will **ORDER** that:

1. Plaintiffs' Motion to Remand (ECF Nos. 62, 63) is **GRANTED**;

2. Defendants' Motion to Dismiss (ECF No. 22) is **DENIED AS MOOT**; and

3. The Clerk is **DIRECTED** to **CLOSE** this case following remand to the Circuit Court for Montgomery County.

A separate order will **ISSUE**.

December 5, 2023

PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

---

[8] Having determined that remand is appropriate under CAFA's home state exception, the Court need not decide whether remand is also appropriate under the local controversy exception.